UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 13-20930-CR-UNGARO

UNITED STATES OF AMERICA,

vs.

BENNY PALMERI-BACCHI,

Defendant.
_____/

## FACTUAL PROFFER

If this case proceeded to trial, the United States would present witnesses and documentary evidence which would prove beyond a reasonable doubt the following:

On February 12, 2009, a Federal Grand Jury in Miami, The Southern District of Florida, returned an indictment charging Jaime Alberto Marin-Zamora, hereinafter referred to as Beto, with conspiring to distribute cocaine with the knowledge that such cocaine would be unlawfully imported into the United States in case number 09-20140-CR-PAS. The United States District Court then issued a warrant for the arrest of Beto dated February 12, 2009.

Beto was a ranking member of the North Valley drug Cartel headed by Wilbur Varela. Beto had moved from Colombia to Venezuela in 2006 to join Wilbur Varela who had moved his drug trafficking headquarters to Venezuela. Beto ran his drug trafficking operation from Venezuela under the protection of Venezuelan officials whom he bribed.

In early February of 2009, Beto was arrested by the Venezuelan head of Interpol, Rudolfo McTurk, who Beto bribed, in order to remain free in Venezuela to continue his drug trafficking operations. However, after Beto's bribe of McTurk, Beto recognized a need to obtain a legal basis

1

## DECLARATION OF J. BRIAN WHITWORTH
## IN SUPPORT OF APPLICATION FOR PROTECTIVE ORDER FOR
## WELLS FARGO BANK ACCOUNT NUMBERS:
## 1010121703233, 2000047616154, 1010121703071, 1010121703107, 1010121703372

I, J. Brian Whitworth, hereby swear and affirm as follows:

1.      I am a Special Agent with the Drug Enforcement Administration (DEA) and have been since July 2012, and I have been assigned to the Miami Field Division (MFD) since January 2013. In this capacity, I am authorized to conduct investigations into criminal violations committed against the United States, including, but not limited to, violations of the controlled substances act, and money laundering.

2.      I am currently assigned to an enforcement group that focuses on international drug trafficking organizations. I have received training on the subject of narcotics trafficking and money laundering from the DEA, including but not limited to the means and methods used by traffickers to import and distribute narcotics, interdiction, smuggling methods, and concealment of laundering of proceeds from illicit drug trafficking activities. I have participated in investigations concerning the possession, manufacture, distribution, and importation of controlled substances, as well as methods used to finance drug transactions and launder drug proceeds. In my capacity as a DEA Special Agent, I have participated in many drug investigations during the course of which I have conducted physical and electronic surveillances and trash pulls. I have interviewed confidential sources of information and collaborated with Special Agents with the DEA and other agencies, who have years of experience in investigating the smuggling of controlled substances and money laundering schemes.

3.      Prior to my employment with DEA, I was a 12-year veteran of the Charlotte-Mecklenburg Police Department where I was a Detective with the International

1

Relations Unit assigned to the Homeland Security Investigations (HSI) Task Force focusing mainly on money laundering, human smuggling/trafficking and aggravated identity theft. I also spent four years in the Violent Crimes Bureau of the Charlotte-Mecklenburg Police Department, where for two years I investigated attempted murder and aggravated assault investigations. For two years I was also a detective in the Homicide Unit where I investigated several murder, kidnapping, suicide, and death investigations. I have conducted multiple interviews of suspects and have analyzed information obtained from court ordered pen register/trap and trace intercepts, International Protocol (IP) addresses, analyzed telephone toll information obtained as a result of subpoenas issued by the Charlotte-Mecklenburg Police Department and, HSI, as well as reviewed numerous taped conversations and records of drug traffickers, homicide suspects and members of organized street gangs.

4. The information in this Declaration is based on my personal knowledge as well as information provided to me by other law enforcement agents and non-law enforcement agencies. This Declaration does not include all of the facts known to me relating to this investigation, but instead sets forth only those facts that I believe are necessary to establish probable cause for the issuance of a protective order for the bank accounts listed below in paragraph 8.

5. On December 19, 2013, an Indictment (the "Indictment") was filed under seal in *United States v. Rodolfo McTurk and Benny Palmeri-Bacchi*, Case No. 13-20930-CR-UNGARO. The General Allegations and Counts 1-4 of the Indictment are realleged and expressly incorporated herein as if set forth in full. The Indictment remains under seal and a copy is attached as Exhibit 1.

6. As alleged in the Indictment, upon conviction of the charged drug conspiracy (Count 1), the United States of America (the "United States") is authorized to seek forfeiture of

2

any property of each named defendant which constitutes or is derived from, proceeds obtained, directly or indirectly, as the result of such offense, and any property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of the offense, pursuant to Title 21, United States Code, Sections 853(a)(1) and (2). Upon conviction of the charged obstruction of justice conspiracy (Count 2) or the extortion violation (Count 4), the United States is authorized to seek forfeiture of any property of each named defendant, real or personal, which constitutes or is derived from proceeds traceable to the commission of such violation, pursuant to Title 18, United States Code, Section 981(a)(1)(C). Lastly, upon conviction of the charged money laundering conspiracy (Count 3), the United States is authorized to seek forfeiture of any property of each named defendant, real or personal, involved in such violation, or any property traceable to such property, pursuant to Title 18, United States Code, Section 982(a)(1). The specified unlawful activity alleged in the money laundering is conspiracy to distribute cocaine, a Schedule II controlled substance, knowing that such substance will be unlawfully imported into the United States, in violation of Title 21, United States Code, Section 959(a)(2) and 963, and conspiracy to obstruct justice in violation of Title 18, United States Code, Section 1512(k).

7.  The forfeiture allegations in the Indictment indicate that the property subject to forfeiture includes a forfeiture money judgment in the sum of $2,500,000 in United States currency, which sum represents proceeds of the charged offenses.

8.  The property to be restrained is the contents, including interest, in the following accounts at Wells Fargo Bank:

    a.  **Account Number 1010121703233,
    in the name of Benny Palmeri, Simone and Angel C. Palmeri;**

    b.  **Account Number 2000047616154,
    in the name of BTMS LLC;**

3

    c.    Account Number 1010121703071,
in the name of Benny Palmeri, Simone and Angel C. Palmeri;

    d.    Account Number 1010121703107,
in the name of Angel C. Palmeri or Simone Palmeri, Karina Montelongo; and

    e.    Account Number 1010121703372,
in the name of Simone Palmeri, Angel Palmeri, Benny Palmeri, Antonia Bacchi.

9. Based on my training and experience and the facts as set forth in the underlying Indictment and this Declaration, there is probable cause to believe that violations of 21 U.S.C. § 963 (drug conspiracy), 18 U.S.C. § 1512(k) (obstruction of justice conspiracy), 18 U.S.C. § 1951(a) (extortion), and 18 U.S.C. § 1956(h) (money laundering conspiracy) and related crimes have been committed by BENNY PALMERI-BACCHI, also known as Benny Palmeri, ("PALMERI-BACCHI") as further discussed below.

10. On February 12, 2009, a Federal Grand Jury in the Southern District of Florida did indict Jaime Alberto Marin-Zamora ("Marin-Zamora"), also known as "Beto" or "Beto Marin," for conspiring to distribute cocaine with the knowledge that such cocaine would be unlawfully imported into the United States. See Case No. 09-20140-CR-PAS, DE 1, Indictment, attached as Exhibit 2. On the same day, the United States District Court for the Southern District of Florida issued an arrest warrant for the arrest of Marin-Zamora on the indictment.

11. Marin-Zamora remained a fugitive until his initial appearance in the Southern District of Florida on September 21, 2010 (Case No. 09-20140-CR-PAS, DE 3, 4). Marin-Zamora pled guilty to the charged drug conspiracy and was sentenced to a serve a term of imprisonment of 195 months (Case No. 09-20140-CR-PAS, DE 3, 4). The district court also entered an Order and Judgment of Forfeiture against Marin-Zamora in the amount of $1,000,000 in United States

currency, the sum equal in value to the property constituting or derived from the proceeds that Marin-Zamora obtained, directly or indirectly, as the result of the charged drug conspiracy (Case No. 09-20140-CR-PAS, DE 38).

12. In and around February 2009, Marin-Zamora was arrested in Venezuela by RODOLFO McTURK ("McTURK"), who was a Venezuelan officer in the Venezuelan Police Agency known as the C.I.C.P.C., Cuerpo de Investigaciones Cientificas, Penales y Criminalisticas and was the Director of the International Police Office, Interpol, for Venezuela. The arrest was done in an effort to delay and prevent Marin-Zamora's extradition to the United States on the pending criminal charge, in exchange for approximately $1 million dollars in United States currency. Marin-Zamora disclosed to agents of the United States that he authorized cooperating co-conspirator # 1 (CC#1) to assist with these matters and the $1 million payment requested by McTURK.

13. CC#1 contacted PALMERI-BACCHI, to create false drug or money laundering charges against Marin-Zamora in Venezuela. PALMERI-BACCHI was a Venezuelan attorney who served as a judge, prosecutor and attorney in the Venezuelan judicial system.

14. Marin-Zamora directed to PALMERI-BACCHI approximately $850,000 in United States currency for the creation of the drug trafficking charges in Venezuela. In March or April 2009, Marin-Zamora began directing cash payments toward the total amount of the bribe. PALMERI-BACCHI requested that part of the bribe, $300,000 in United States currency, be transferred into one of his bank accounts in the United States.

15. CC#1 requested the assistance of David Jacobo Taurel Shamis ("Taurel Shamis") to receive the transfer of $300,000 in United States currency in Taurel Shamis' bank account in the United States, and then transfer the funds to an account of PALMERI-BACCHI. Taurel Shamis

agreed to receive the money and make the transfer to PALMERI-BACCHI. In May and June 2009, Marin-Zamora and CC#1 arranged for two international transfers of funds from Curacao into Banco Santander International ("BSI") Account Number 740175, an account controlled by Taurel Shamis, for a total of approximately $599,950 in United States currency. Based on information provided by Marin-Zamora and other cooperators, all of these funds are believed to be proceeds from the drug conspiracy and the obstruction of justice conspiracy charged in the Indictment. Further investigation revealed BSI Account Number 740175 has been closed.

16. On September 8, 2009, $100,000 was transferred from BSI Account Number 740175 into Espirito Santo Bank ("ESB") Account Number 116456339, another account controlled by Taurel Shamis. Based on information provided by Marin-Zamora and other cooperators, all of these funds deposited and transferred to ESB Account Number 116456339 are believed to be proceeds from the drug conspiracy and the obstruction of justice conspiracy charged in the Indictment.

17. On September 8, 2009, $300,000 was transferred from BSI Account Number 740175 into a United States Wells Fargo Bank ("Wells Fargo," formerly Wachovia Bank) Account Number 1010121703233 in the name of Benny Palmeri, and his relatives, Simone and Angel C. Palmeri, controlled by PALMERI-BACCHI. Based on information provided by Marin-Zamora and other cooperators, these funds deposited and transferred to Wells Fargo Account Number 1010121703233 are believed to be proceeds from the drug conspiracy and the obstruction of justice conspiracy charged in the Indictment.

18. On September 9, 2009, $300,000 was transferred from Wells Fargo Account Number 1010121703233 to another United States Wells Fargo Account Number 2000047616154 in the name of BTMS LLC, an account controlled by PALMERI-BACCHI. BTMS LLC, was

6

registered with the State of Florida as a Florida limited liability Company effective April 7, 2009, and Benny Palmeri was listed as the Managing Manager of the company. Based on information provided by Marin-Zamora and other cooperators, all of these funds deposited and transferred to Wells Fargo Account Number 20000476161541 are believed to be proceeds from the drug conspiracy and the obstruction of justice conspiracy charged in the Indictment. Thereafter, multiple transfers of funds were made between the five Wells Fargo accounts referenced in paragraph 8, all of which are controlled by PALMERI-BACCHI.

19. Further investigation revealed that PALMERI-BACCHI had contacted a cooperating co-conspirator #2 ("CC#2") to assist in opening multiple bank accounts and corporations so PALMERI-BACCHI could transfer money from Venezuela and Europe to the United States. CC#2 took PALMERI-BACCHI to Bank of America and Wells Fargo Bank (formerly Wachovia), where they opened several bank accounts in various names. PALMERI-BACCHI deposited money in all of the bank accounts and instructed CC#2 to have the bank statements e-mailed to PALMERI-BACCHI.

20. Between 2009 and 2010, PALMERI-BACCHI extorted CC#2 by forcing him to make purchases for PALMERI-BACCHI to include, but not limited to, vehicles and computers, and having them shipped to Margarita Island, Venezuela. CC#2 linked CC#2's business account to PALMERI-BACCHI's accounts at Wells Fargo in order to facilitate the transfer of monies from PALMERI-BACCHI's accounts into an account of CC#2 to help make purchases. CC#2 continued to assist PALMERI-BACCHI while under an assumed threat against CC#2 and CC#2's family in Venezuela.

21. In the summer of 2010, PALMERI-BACCHI told CC#2 to travel to Venezuela. While in Venezuela, CC#2 signed over vehicle titles to PALMERI-BACCHI and/or his associates

which had been shipped to Venezuela. One of the vehicles was given to Antonio Denis de Jesus ("Denis de Jesus"), a counter narcotics judge. PALMERI-BACCHI informed CC#2 that he was trying to create false drug trafficking charges for a Colombian, later identified as Marin-Zamora, in order to prevent his extradition from Venezuela. PALMERI-BACCHI stated that all the money he was moving into the United States was received from Marin-Zamora. PALMERI-BACCHI further explained that some of the vehicles purchased were payments to Denis de Jesus for the creation of the false drug trafficking charges.

22. Accordingly, based on the information in this Affidavit, I respectfully submit that there is probable cause to believe that each of the Wells Fargo Bank Accounts referenced in paragraph 8 above: a) is property that was used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of the drug conspiracy charged in Count 1 of the Indictment, in violation of 21 U.S.C. § 963, and is subject to forfeiture pursuant to 21 U.S.C. § 853(a)(2); and b) is property involved in the money laundering conspiracy charged in Count 4 of the Indictment, or any property traceable to such property, in violation of 18 U.S.C. § 1956(h), and is subject to forfeiture pursuant to 18 U.S.C. § 982(a)(1).

Pursuant to Title 28, United States Code, Section 1746, I declare under penalty of perjury that the facts alleged herein are true and correct to the best of my knowledge.

Executed this 18th day of July, 2014.

_____
J. BRIAN WHITWORTH
SPECIAL AGENT
DRUG ENFORCEMENT ADMINISTRATION